IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| OGIESOBA CITY OSULA, § <br>     MOVANT, § <br> § <br> V. § <br> § <br> UNITED STATES OF AMERICA, § <br>     RESPONDENT. § | CIVIL CASE NO. 3:17-CV-547-M-BK <br> (CRIMINAL CASE NO. 3:12-CR-132-M-5) |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Movant Ogiesoba City Osula's *Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255*, was referred to the undersigned United States magistrate judge for findings and a recommended disposition. Upon review of the relevant pleadings and applicable law, the Section 2255 motion should be **DENIED**.

**I.    BACKGROUND**

Osula was convicted by a jury of conspiracy to defraud the United States and to commit wire fraud, mail fraud, and bank fraud, making false claims, access device fraud, and aggravated identity theft. *United States v. Osula*, No. 3:12-CR-00132-M-5 (N.D. Tex., Dallas Div., May 28, 2014), *aff'd*, 623 Fed. Appx. 257 (5th Cir. Dec. 1, 2015) (per curiam). He was sentenced to an aggregate term of 210-months of imprisonment. *Id*.

Osula timely filed this Section 2255 motion, asserting ineffective assistance of counsel. The government has filed a response in opposition and Osula has filed a reply.  Doc. 10; Doc. 11. Because Osula has not shown that his trial and appellate counsel were constitutionally ineffective, his Section 2255 motion fails on the merits.

## II. ANALYSIS

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). To obtain post-conviction relief on a claim that defense counsel was constitutionally ineffective, Osula must prove that counsel's performance was deficient and that counsel's substandard performance caused prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697.

To prove deficient performance, Osula must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id.* at 688. Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Indeed, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of ineffective assistance of counsel at sentencing, Osula must demonstrate that his sentence was increased by the deficient performance of defense counsel. *Glover v. United States*, 531 U.S. 198, 200, 203-204 (2001).

### A. Jury's Exposure to Osula's Custodial Status

Osula asserts his trial counsel rendered ineffective assistance in: (1) failing to object to the jury's inadvertent receipt of a document showing that Osula was in custody at the time the superseding indictment was issued, and (2) failing to request that the Court question the jury

further after the jury verdict.  Doc. 1 at 7.  Osula claims fail because he has not demonstrated that he was prejudiced by counsel's alleged substandard performance

After the jury returned its verdict, the district judge met with the jurors in chambers to thank them for their service.  Crim. Doc. 315 at 1.  During that meeting, a juror mentioned that the indictment indicated that the defendant was in custody.  *Id*.  Upon review, the Court determined that attached to the indictment was a sheet indicating that no warrant need issue because the defendant was already in custody.  *Id.*  The Court informed the parties of the juror's comment and subsequently held two post-trial conferences.  However, neither party desired the Court to further question the jurors about the issue.  *Id.*  That notwithstanding Osula filed a motion for mistrial, which the Court subsequently denied because he had waived any error and, the waiver notwithstanding, a mistrial was not warranted.  *Id.*  The United States Court of Appeals for the Fifth Circuit affirmed on plain error review, concluding:

> the record does not support that the reference to Osula's custodial status affected his substantial rights.  The disclosure of Osula's custodial status was unintentional and limited, did not necessarily connote his guilt, and concerned his pretrial detention for the instant offense instead of implicating a prior conviction or suggesting continuing detention.  Further, the fact that Osula was in custody was incidental to the matters at trial, and the district court instructed the jury that the indictment was not evidence of guilt and that Osula was presumed innocent.  Moreover, there was overwhelming evidence of Osula's guilt adduced at trial. Thus, Osula has not shown how the reference to his pretrial custodial status affected the outcome of the proceedings.

*Osula*, 623 Fed. Appx. at 257 (citated cases omitted).

In his Section 2255 motion, Osula insists that, because of the inadvertent exposure of his custodial status and counsel's failure to object, the jury could have (1) viewed him as a "bad guy" and "too dangerous to allow in society" and (2) convicted him for his reputation instead of upon the evidence presented at trial.  Doc. 11 at 3-4; Doc. 3 at 12.  He avers that the lack of an objection left the jury with the impression that Osula's incarceration was evidence of his guilt or

that Osula had been convicted and incarcerated for unrelated crimes and, therefore, must be guilty of the instant charges. Doc. 3 at 12. Osula also contends that "[h]ad counsel immediately moved for a mistrial and requested that the jury be questioned as to the effect of this inadmissible evidence on its deliberations and verdict, it is likely that the court would have received evidence of the prejudicial effect and would have granted a mistrial." Doc. 11 at 5; Doc. 3 at 13. Osula's assertions are unavailing.

To demonstrate prejudice, Osula "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, the question under *Strickland* is "whether it is 'reasonably likely' the result would have been different." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (quoting *Strickland*, 466 U.S. at 693, 697). However, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

Here, Osula cannot demonstrate that it is reasonably likely that the result would have been different – namely that he would not have been convicted had counsel objected to the inadvertent exposure and that the Court would have granted his motion for a mistrial if counsel had requested that the Court question the jury further. A review of the record confirms the appellate court's finding that the disclosure of Osula's custodial record was unintentional and very limited. Moreover, as the Court of Appeals concluded, it implicated only his pretrial detention for the offense in question and did not mention any prior conviction or otherwise imply continuing detention. *Osula*, 623 Fed. Appx. at 257. Osula's assertion that the jury *could have* viewed him as a bad and dangerous guy who had been convicted and incarcerated for unrelated crimes is pure conjecture, especially considering the overwhelming evidence of his guilt

presented at trial and the Court's instruction to the jury that the indictment was not evidence of guilt and that Osula was to be presumed innocent. Crim. Doc. 267 at 2; *Osula*, 623 Fed. Appx. at 257. As such, the Court concludes that Osula has not shown the requisite *Strickland* prejudice and, thus, this claim fails.

### A. Four-level Leadership Role Enhancement

Osula also asserts that trial counsel was ineffective in arguing at sentencing that no leadership role enhancement applied, instead of contending that Osula's role in the offense was managerial, thus warranting only a three- or two- level enhancement as opposed to a four-level enhancement. Doc. 3 at 19-20. Osula avers that he "did not control the action of any other individual and did not receive a larger share of the proceeds than others involved in the offense," hence "his actions more closely resemble that of mere management, not leadership." Doc. 3 at 22; *see also* Doc. 11 at 7-8. He maintains that "[h]ad counsel raised this argument at sentencing or direct appeal, the 4-level leadership enhancement would not apply." Doc. 11 at 8. However, Osula cannot establish deficient performance and prejudice.

First, the assertion that Osula's role in the offense was managerial would have conflicted with his steadfast declarations of innocence at sentencing. Even during his allocution, Osula reiterated that he did not agree with the jury verdict. Crim. Doc. 388 at 32-36. As such, counsel's strategic decision to argue for no leadership-role enhancement was reasonable under the circumstances. Indeed, both this Court and the Court of Appeals found that the four-level-leadership-role enhancement was appropriate. Crim. Doc. 388 at 11, 55; *Osula*, 623 Fed. Appx. 257, 258-59. That notwithstanding, because the Court declined to impose a significantly higher sentence on Osula than that given a more culpable co-conspirator, the Court ultimately sentenced Osula to an aggregate term of 210 months, which was within the guideline range as calculated

without the four-level role enhancement and well within the ranges that would have resulted from only a two- or three- level role enhancement.[1] Crim. Doc. 388 at 63-64. Consequently, Osula cannot show prejudice—namely that his sentence was increased by counsel's alleged deficient performance. *Glover*, 531 U.S. 198, 200, 203-204. Thus, this claim likewise fails.[2]

### B. Counsel's Failure to Present Issues on Appeal

Osula's claims of ineffective assistance of counsel on appeal fare no better. First, Osula asserts his appellate counsel was ineffective for failing to present the alternative theory of role-enhancement. Doc. 1 at 7; Doc. 3 at 22-23. However, for the reasons previously discussed, the claim has no merit. Consequently, appellate counsel was not ineffective in failing to raise it on direct appeal. *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) ("'Counsel is not deficient for, and prejudice does not issue from, failure to raise [on direct appeal] a legally meritless claim.'" (quoting *Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990)).

Osula also asserts that his appellate counsel rendered ineffective assistance by failing to argue that his "right to due process and a fair trial was violated" when the Court allowed the introduction of evidence related to a conspiracy in Cincinnati, Ohio. Doc. 1 at 7. He maintains that the admission of such evidence violated Federal Rule of Evidence 404(b) and was highly prejudicial because it sought to attribute to Osula the criminal conduct of others in Cincinnati. Doc. 3 at 15, 17. However, he again fails to establish deficient performance or prejudice. *See*

---

[1] Combining an offense level of 35 (instead of offense level 39) with a criminal history category of I results in a guideline range of 168-210 months.

[2] Osula has abandoned the other instances of ineffective assistance at sentencing, which he mentioned in the Section 2255 motion. Doc. 1 at 7. His *Memorandum of Law* and *Reply* briefed only the role-enhancement issue and did not object when the Government's response addressed solely to that issue. Doc. 1 at 34-42; Doc. 3 at 17-23; Doc. 11 at 7-8.

*Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (applying *Strickland* standard in evaluating the ineffective assistance of appellate counsel).

On direct appeal, counsel raised three issues, arguing that the Court erred in: (1) denying the motion for mistrial, (2) calculating the loss mount and number of victims, and (3) applying the four-level role enhancement.  Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Smith*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  It is counsel's professional duty to choose among potential issues, according to his judgment as to their merit and his tactical approach to maximize the likelihood of success on appeal.  *Jones*, 463 U.S. at 752; *Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003) (noting counsel is obligated only to raise and brief those issues that are believed to have the best chance of success).

Osula has not demonstrated that the issue that he contends appellate counsel should have raised was clearly stronger than the issues counsel did pursue on direct appeal.  *See Smith*, 528 U.S. at 288 ("only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome" (cited case omitted)).  Osula states that the evidence of his Cincinnati arrest and association with the Cincinnati criminal activity was introduced at trial, over defense counsel's objection, and later emphasized during closing argument.  Doc. 3 at 16-17.  He cites selected portions of the trial transcript and avers generally that: (1) the "introduction of the evidence was highly prejudicial" and "caused his conviction in the instant case," and (2) "[h]ad counsel raised this error on appeal, the result of the proceeding would have been different, and the Fifth Circuit would have likely vacated [his] convictions and ordered a new trial."  Doc. 3 at 17.  However, Osula offers no further explanation, argument, or

legal authority, in either his *Memorandum of Law* or *Reply*, in support of his conclusory assertions.  Doc. 3 at 16-17; Doc. 11 at 6-7 (Osula's reply that his *Memorandum of Law* "fully briefed the reasons why this highly prejudicial evidence should never have been admitted at trial and why counsel was ineffective on appeal for failing to raise the claim").

Moreover, as the Government correctly points out, the evidence of the Cincinnati arrest and association with the Cincinnati criminal activity was intrinsic to the charges pending against Osula and, thus, properly admitted under Rule 404(b) of the Federal Rules of Evidence.  *See United States v. Coleman,* 78 F.3d 154, 156 (5th Cir. 1996) ("'Other act' evidence is 'intrinsic' when the evidence of the other act and evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged.") (quoted case omitted)); *United States v. Garcia,* 27 F.3d 1009, 1014 (5th Cir. 1994) (intrinsic "other act" evidence does not implicate Rule 404(b)).

Osula's argument that there was a "mere overlap of some of the participants in the conspiracies" in Dallas and Cincinnati is plainly refuted by the record.  Doc. 11 at 6.  Evidence that the Dallas and Cincinnati operations were interconnected included that establishing: (1) Osula and Ojonugwa traveled to Cincinnati to meet the leader of the Cincinnati scheme and, while there, the police searched their car and discovered a large amount of money and Wal-Mart Green Dot cards similar to those tied to the Dallas conspiracy, Crim. Doc. 304-1 at 8 ¶ 24, Crim. Doc. 415 at 187-90, 195; (2) the Dallas operation supplied stolen identities to the Cincinnati scheme, Crim. Doc. 416 at 48-49, 59, 102-03; and (3) Osula received electronic filing identification numbers from the Cincinnati group, Crim. Doc. 304-1 at 8 ¶ 24; Crim. Doc. 416 at 35, 66-67, 85.

Based on the record, Osula cannot prevail on his claim of ineffective assistance of counsel on appeal.

### III.   CONCLUSION

Osula has failed to demonstrate that his trial and appellate counsel were ineffective. Therefore, the motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on January 9, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).